# In the United States District Court
# for the District of Kansas

**Petsamai Phommaseng**,
    Petitioner,

v.   Case No. 15-cr-20020-JAR-5
(related to 14-cr-20014,
15-cr-20006, 18-cv-02479)

**United States of America**,
    Respondent.

## Petitioner's Motion for Leave to Conduct Discovery

Petitioner has filed Motions to Vacate and Discharge with Prejudice Pursuant to 28 U.S.C. § 2255 and Memorandum in Support ("Motions"),[1] arguing that, *inter alia*, the government violated his Sixth-Amendment right to protected attorney-client communications. Petitioner now seeks leave of the Court, and asks for an order to conduct discovery related to this claim. If granted, Petitioner respectfully asks the Court to order the government to produce the requested discovery, as set forth below, within 30 days.

The government takes no position on this request because it has not yet seen the discovery requests, and reserves the right to object.

---

[1] Docket Entry (D.E.) 550; *see also United States v. Phommaseng*, No. 14-cr-20006, D.E. 205; *United States v. Phommaseng*, No. 14-cr-20014, D.E 746.

1

## Applicable Law

Federal courts jealously guard habeas corpus[2] as the last bulwark against the unconstitutional deprivation of liberty.[3] To meaningfully assess habeas-corpus claims and protect federal rights, courts must be able to accurately ascertain the facts underlying the claims.

Rule 6 of the Rules Governing Section 2255 Proceedings governs discovery matters. In relevant part, Rule 6 provides as follows:

> (a) **Leave of Court Required**. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C.A. § 3006A.
>
> (b) **Requesting Discovery**. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

---

[2] *See, e.g., United States v. Hayman*, 342 U.S. 205, 219 (1952) ("[T]he history of Section 2255 shows that it was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.")

[3] *See, e.g., Harris v. Nelson*, 394 U.S. 286, 290-91 (1969) ("The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action.").

Rule 6 therefore grants district courts broad discretion[4] in conducting discovery in Section 2255 proceedings upon a showing of "good cause."[5]

Petitioner requests discovery related to the Sixth-Amendment claim that the government violated his constitutional right to confidential attorney-client communications. Good cause exists for the Court to authorize discovery here. Petitioner has set forth a viable claim built from specific facts gathered from the litigation in *United States v. Black*,[6] in addition to extensive research and analysis conducted by the Federal Public Defender Office (FPD), to show that, once the facts are fully developed, Petitioner will be entitled to relief. In support of these discovery requests, we incorporate herein the facts presented in Petitioner's § 2255 Motions, as well as in his Supplement[7] to those Motions.

---

[4] The Advisory Committee Note to Rule 6 clarifies that the Rule is meant to be read "consistent" with the Supreme Court's decision in *Harris v. Nelson*, *supra*, in which the Court declined to make the ordinary discovery rules applicable in habeas proceedings, leaving it to the courts' discretion to "use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court 'dispose of the matter as law and justice require.'" *Id.* at 290 (citing 28 U.S.C. § 2243).

[5] *Harris*, 394 U.S. at 300 ("Good cause" exists for a court to authorize discovery where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief"); *United States v. Moya-Breton*, 439 F. App'x 711, 715–16 (10th Cir. 2011) (unpublished) (same); *see also Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009) ("If such a habeas claim is viable, federal procedural rules permit discovery 'for good cause.'") (quoting Rule 6); *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (finding that petitioner demonstrated "good cause" for discovery under Rule 6(a)).

[6] *United States v. Black, et. al*, No. 16-20032-JAR.

[7] D.E. 583.

The USAO has sole and unilateral control of much information about its policies and practices and the conduct of its attorneys, employees, and agents that are directly relevant to Petitioner's claim and the remedy sought. Because a portion of Petitioner's claim will rest on the government's destruction of evidence, or failure to preserve relevant information, the government's conduct in response to the Court's investigation in *Black* is also relevant here. Furthermore, the scope and pervasiveness of the government's misconduct with regard to attorney-client communications is also relevant given that we seek relief not just on the intrusion into Petitioner's protected attorney-client communications, but in order to punish the government's extensive and systemic misconduct here and to deter future government misconduct, both with respect to the sanctity of attorney-client communications and the need to honor the Court's inquiries and orders. For these reasons, the information requested below is necessary to fully develop the facts for this Court's determination of the proper relief warranted under these specific circumstances.[8]

---

[8] If the court finds that the sentence imposed is "open to collateral attack," or that there has been a denial or infringement of the Petitioner's constitutional rights "as to render the judgment vulnerable to collateral attack," the court "shall vacate and set the judgment aside and shall discharge the [petitioner] or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *see also Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) ("A federal court is vested with 'the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*" and "'possesses power to grant *any form of relief necessary* to satisfy the requirement of justice'") (emphasis in original) (quoting *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968); *Levy v. Dillon*, 415 F.2d 1263, 1265 (10th Cir. 1969)).

### Initial discovery production requests

Upon the Court's leave, Petitioner requests the production of the documents and materials as set forth below. Notably, this is Petitioner's first discovery request, and depending on the government's productions and counsel's ongoing investigations, Petitioner may seek additional discovery at a later date.

### *Definitions*

    a.  "accessed" means sought or obtained access to, or listed to or viewed, or attempted to listen to or view, or directed another person to do one or more of those things. It also means directly receiving information, materials, or objects of any kind or type; or indirectly receiving information about or descriptions of information, materials, or objects that were accessed by another person;

    b.  "are or were in the possession, custody, or control" includes documents or materials, or exact copies of the same, that (1) are now in the possession, custody, or control of the United States Attorney's Office for the District of Kansas, and which must be produced, and (2) documents or materials that once were in the possession, custody, or control of that office but no longer remain so, which must be reasonably identified along with a statement as to why that office no longer possesses, has custody of, or controls either the originals or the copies.

    c.  "AUSA" means Assistant United States Attorney; "SAUSA" means Special Assistant United States Attorney.

    d.  "*Black*" means the underlying case of *United States v. Lorenzo Black*, Case No. 2:16-CR-20032, U.S. District Court for the District of Kansas, and its named defendants and any interested parties as identified in the docket of that case. It also means those cases and individuals who have filed motions under Fed. R. Crim. Procedure Rule 41 and/or 28 U.S.C. § 2855 alleging relief arising out of evidence or findings in *Black*.

    e.  "CCA" means the Corrections Corporation of America (now known as "CoreCivic") detention facility, Leavenworth, Kansas.

    f.  "document(s)" or "material(s)" means anything written, printed, electronically created, or copied that serves to record or chronicle information.

g. "the investigation" means any and all of the three phases of investigation that were authorized by the Court in *Black* and ordered to be conducted by the Special Master appointed by the Court.

h. "U.S. Attorney," and "First Assistant U.S. Attorney," means those officials serving in the District of Kansas at any time during the relevant time period and to the date of production.

i. "USAO-DKan" and "USAO" mean the United States Attorney's Office for the District of Kansas.

j. "USAO-DKan personnel" means all employees of the United States Department of Justice working at or assigned to the United States Attorney's Office for the District of Kansas.

*Production requests*

1. Any information that the USAO (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other employees and contractors) requested, obtained, possessed, reviewed, re-disseminated, or relied on recorded CCA phone calls in Petitioner's case, whether or not those calls included attorney-client calls or were requested, obtained, possessed, reviewed, re-disseminated or relied in other cases or investigations.

2. Any information that the USAO (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other employees and contractors) knew or should have known that the Petitioner's attorney-client calls were recorded, requested, obtained, possessed, reviewed, re-disseminated, or relied upon at any time.

3. Any and all documents and materials created by USAO-DKan personnel and provided to USAO-DKan employees, contractors, and/or any federal, state, or local agent, to the extent such documents or materials concern or relate to retention, preservation, and production of materials that relate to or concern the *Black* investigation.

4. Any and all documents and materials sent, given to, or received by AUSA Emily Metzger in response to her instructions concerning retention, preservation, and production of materials that relate to or concern the *Black* investigation.

5. A list or log of all repositories in the USAO-DKan information systems that could have been, were, or are now being searched using the June 7, 2017, list of search terms negotiated by USAO-DKan and the Special Master (the list of search terms is contained in *Black* docket 298-4, exh. D). Repositories may be identified by

employee initials for USAO-DKan personnel, if applicable. A repository may be identified artificially if its description would reveal contents claimed to be privileged from disclosure under 28 C.F.R. § 26.26.

6. Any and all documents or materials that reference, discuss, describe or pertain to:

    a.    USAO-DKan management instructions to USAO-DKan personnel, and its agents and contractors, as to what level of cooperation would be provided to the Special Master by USAO-DKan;

    b.    Directions or instructions of any kind or nature, directed to a specific employee, agent, or contractor, or concerning a specific employee, agent, or contractor, as to whether that employee, agent, or contractor was or is now permitted to meet with the Special Master, whether at the Special Master's request or at the recipient's request;

    c.    Directions or instructions of any kind or nature, to any USAO-DKan personnel, its agents, or its contractors that authorize, limit, or forbid preparing for or providing documents and materials to the Special Master.

7. Any and all documents that discuss or describe "taint teams" used in *Black* or in this case.

8. Any documents or materials not already filed as exhibits in the *Black* case, relating to allegations that personnel, contractors, and agents of USAO-DKan personnel and their contractors acted in violation of the U.S. Constitution, statute, or other law by obtaining, possessing, listening to, or watching confidential communications of inmates and attorneys.

9. Any documents or materials that discuss a meeting to include AUSA Kim Flannigan, SAUSA Erin Tomasic, or both, and Attorney Jacquelyn Rokusek, limited to a case where Rokusek represented Richard Dertinger.

10. Any documents or materials regarding then-SAUSA Erin Tomasic's issuance of any Grand Jury subpoena in *Black*. This demand is limited to documents or materials that: (a) were created prior to the issuance of any such subpoena, and (b) are not prohibited from disclosure under Fed. R. Crim. Pro. 6(e).

11. A list of every individual working at, working with, or detailed to, the USAO-DKan (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other contractors) who is known to have accessed (whether deliberately or inadvertently):

(a) any video recording of attorneys meeting at CCA with detainees; and/or,

(b) any telephone conversations between CCA detainees and attorneys.

12.  For every person identified in item 11 who directed or permitted someone else to listen to or view the audio or video recording, identify the persons who: (a) so directed or permitted, and (b) were so directed or permitted.

13. Any and all documents and materials, not already in evidence, relating to the preservation or non-preservation of any computer, computer software, disk, or other electronic paraphernalia used by USAO-DKan to allow viewing of video recordings produced by CCA related to *Black*. This demand goes to the time before and after the Court ordered preservation of such materials by the USAO-DKan, and it includes production of documents or materials that prescribe the time frame for the regular district-wide implementation of computer phaseouts identified in the Court's order.

## Conclusion

For these reasons, Petitioner asks the Court for leave and for an order authorizing Petitioner to conduct discovery related to his Sixth-Amendment claim that the government violated Petitioner's right to protected attorney-client communications, and that the proper remedy for this violation is to vacate the judgments and dismiss with prejudice to further prosecution. If granted, Petitioner respectfully asks that the Court order the government to produce the discovery requested within 30 days.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: melody_brannon@fd.org

s/ Kirk Redmond
KIRK C. REDMOND, #18914
First Assistant Federal Public
Defender for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
Email: kirk_redmond@fd.org

## CERTIFICATE OF SERVICE

I certify that on 01/17/2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties and:

Stephen McAllister
United States Attorney
District of Kansas
stephen.mcallister@usdoj.gov

Duston Slinkard
Assistant U.S. Attorney
Chief, Criminal Division
duston.slinkard@usdoj.gov

s/ Melody Brannon
MELODY BRANNON, #17612

9