**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

      **Plaintiff-Respondent,**

      **v.**

**PETSAMAI PHOMMASENG,**

      **Defendant-Petitioner.**

**Case No. 15-cr-20020-JAR-5**
**(related to 14-cr-20014-JAR,**
**15-cr-20006-JAR)**

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Petsamai Phommaseng's Motion for Leave to Conduct Discovery (Doc. 584) under Rule 6 of the Rules Governing Section 2255 Proceedings. The government responded and moves to enforce the collateral attack waiver and to dismiss Petitioner's Sixth Amendment claim in Ground 1 of his 28 U.S.C. § 2255 motion as procedurally defaulted, arguing his motion for leave to conduct discovery should be denied because he cannot show "good cause" for the requests (Doc. 593). Alternatively, the government seeks bifurcation of the discovery issues before the Court determines specific objections to individual requests. For the reasons explained in detail below, the Court denies the government's motion to dismiss Ground 1 as waived or procedurally defaulted, grants in part Petitioner's motion for leave to conduct discovery for good cause, and refers the specific requests and objections thereto to Chief Magistrate Judge James P. O'Hara.

## I.    Background and Procedural History

Petitioner was charged in the District of Kansas in three separate cases, alleging numerous drug trafficking, conspiracy, and firearm charges.[1]  On April 26, 2016, Petitioner pled guilty in each case pursuant to Fed. R. Crim. P. 11(c)(1)(C) and entered into three separate plea agreements.[2]  In Case No. 15-20006-JAR, Petitioner entered a conditional plea, reserving the right to appeal the Court's order denying his motion to suppress evidence obtained as a result of a January 21, 2015 traffic stop and subsequent search.  In all three cases, Petitioner expressly waived his right to appeal or collaterally attack his convictions or sentences, except for claims of ineffective assistance of counsel or prosecutorial misconduct, as long as the Court sentenced him within the range recommended by the parties under Rule 11(c)(1)(C).[3]

Meanwhile, the government initiated a separate drug conspiracy investigation during the spring of 2016, targeting detainees and employees of Corrections Corporation of America ("CCA"), a large, private detention facility located in Leavenworth, Kansas.[4]  Although various drug charges were initially filed against six defendants in *United States v. Black*, the Court was placed on notice early on that the government suspected the conspiracy involved at least 95 inmates and 60 more individuals outside the facility.[5]  Facts uncovered after an early discovery conference in the *Black* case during the summer of 2016 revealed discovery practices that

---

[1]D. Kan. No. 15-20006-JAR-1 (charging Petitioner with being a user of methamphetamine in possession of a firearm, using and carrying a firearm during and in relation to a drug trafficking crime, and possessing with intent to distribute methamphetamine); D. Kan. No. 15-20020-JAR-5 (conspiracy to manufacture, distribute, and possess with intent to distribute 50 grams or more of methamphetamine and using a communication facility to commit the conspiracy charge); 14-20014-JAR-13 (conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine).

[2]Docs. 244–247.

[3]*Id.*

[4]The facility has since been renamed CoreCivic. The Court refers to it throughout this order as CCA.

[5]D. Kan. No. 16-20032-JAR, Tr. July 21, 2016 Hr'g, Doc. 75 at 23:2–9.

implicated the Sixth Amendment's right to counsel: the United States Attorney's Office for the

District of Kansas ("USAO") possessed soundless video recordings of attorney-client visitation

rooms at CCA and possessed and redistributed recordings of telephone calls between several

detainees and their counsel.

Once notified of the video and audio recordings, this Court immediately clawed back and

impounded the recordings and ordered all local federal detention facilities to cease recording

attorney-client meetings and phone calls. On October 11, 2016, the Court appointed a Special

Master to investigate matters related to the government's conduct. Since the Special Master's

appointment, an extensive record has been developed regarding the government's procurement

and possession of the recordings. After a protracted evidentiary hearing, this Court made

extensive findings of fact and conclusions of law, which are incorporated by reference herein

("the *Black* Order").[6]

On August 8, 2016, in each of his three cases, Petitioner filed a Motion for Fed. R. Crim.

P. 16(E) Discovery, Confidential Legal Visitation, and Return of Property pursuant to Rule

41(g).[7] The motion alleged that counsel for Petitioner learned on August 2, 2016 that attorney-

client meetings had been video recorded at CCA and provided to the USAO upon request, and

that the government had used the confidential communications in pending litigation and had

disclosed the recordings as discovery to other defendants and counsel. As set out in the *Black*

Order, the Special Master's investigation in that case began because of allegations related, in

part, to Petitioner and his criminal case. As that Order details, the USAO attempted to gain a

tactical advantage in another criminal matter by using video recordings to target Petitioner's

---

[6]D. Kan. No. 16-20032-JAR, Doc. 758.

[7]Doc. 318.

attorney, Jacquelyn Rokusek, because of the overlap between Petitioner, Richard Dertinger, and the CCA investigation.[8]  Petitioner raised Due Process and Sixth Amendment issues in the Rule 41(g) motion.  The government did not respond, and the Court terminated the motion as moot after Petitioner was sentenced.

On January 18, 2017, Petitioner moved to withdraw his guilty pleas, alleging prosecutorial misconduct related to the government's representations about the sentence the parties' agreed upon in the Rule 11(c)(1)(C) plea agreements, which Petitioner claimed was legally impossible for the Court to impose.[9]  Although the government did not oppose Petitioner's request to withdraw his guilty pleas, the Court denied Petitioner's motion after finding the parties had agreed to impose separate sentences in each of the three cases.[10]  The Court proceeded to sentence Petitioner, in three separate sentencing hearings, to 180 months' imprisonment in each case, to run concurrently to the other two cases.

Petitioner filed a *pro se* appeal challenging the Court's denial of his motion to suppress evidence obtained as a result of a January 21, 2015 traffic stop and subsequent search.  After the government moved to dismiss the appeal as untimely, Petitioner voluntarily dismissed the appeal.

Under the Court's Standing Order 18-3, the Federal Public Defender ("FPD") is appointed to represent all petitioners alleging Sixth Amendment violations based on evidence uncovered during this investigation under 28 U.S.C. § 2255.[11]  On September 6, 2018, Petitioner filed a Motion to Vacate and Discharge with Prejudice Under 28 U.S.C. § 2255 and

---

[8]*Black* Order at 67–80.

[9]Doc. 383.

[10]Doc. 394.

[11]Standing Order 18-3 (July 17, 2018), http://www.ksd.uscourts.gov/wp-content /uploads/2018/07/Standing-Order-18-3-Appointing-FPD.pdf.

Memorandum in Support in his three criminal cases.[12]  Petitioner asserted three grounds for relief: (1) the government violated his Sixth Amendment rights when it obtained video recordings of his meetings with counsel while he was incarcerated at CCA; (2) Rokusek provided ineffective assistance of counsel when she failed to timely file a notice of appeal; and (3) Rokusek provided ineffective assistance of counsel when she failed to adequately challenge the drug quantity attributed to him.

After the government divested possession of recordings of Petitioner's attorney-client calls and derivative evidence therefrom to the Court in January 2019, the Court granted Petitioner leave to supplement his first Sixth Amendment claim.[13]  Petitioner supplemented his motion with evidence specific to the government's procurement and possession of at least 76 recorded attorney-client calls between Petitioner and his counsel during the course of his prosecution, in support of his claim that the government violated his Sixth Amendment right to effective counsel.  Petitioner argues that the proper remedy for the government's "extensive and systematic" misconduct is to vacate his judgments with immediate dismissal and prejudice to any further prosecution.

Petitioner also seeks leave of court to conduct the following discovery/production requests related to his Sixth Amendment claim within 30 days:

> 1. Any information that the USAO (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other employees and contractors) requested, obtained, possessed, reviewed, re-disseminated, or relied on recorded CCA phone calls in Petitioner's case, whether or not those calls included attorney-client calls or were requested, obtained, possessed, reviewed, re-disseminated or relied in other cases or investigations.

---

[12]Doc. 550.

[13]Doc. 582.

2. Any information that the USAO (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other employees and contractors) knew or should have known that the Petitioner's attorney-client calls were recorded, requested, obtained, possessed, reviewed, re-disseminated, or relied upon at any time.

3. Any and all documents and materials created by USAO-DKan personnel and provided to USAO-DKan employees, contractors, and/or any federal, state, or local agent, to the extent such documents or materials concern or relate to retention, preservation, and production of materials that relate to or concern the *Black* investigation.

4. Any and all documents and materials sent, given to, or received by AUSA Emily Metzger in response to her instructions concerning retention, preservation, and production of materials that relate to or concern the *Black* investigation.

5. A list or log of all repositories in the USAO-DKan information systems that could have been, were, or are now being searched using the June 7, 2017, list of search terms negotiated by USAO-DKan and the Special Master (the list of search terms is contained in *Black* docket 298-4, exh. D). Repositories may be identified by employee initials for USAO-DKan personnel, if applicable. A repository may be identified artificially if its description would reveal contents claimed to be privileged from disclosure under 28 C.F.R. § 26.26.

6. Any and all documents or materials that reference, discuss, describe or pertain to:

a. USAO-DKan management instructions to USAO-DKan personnel, and its agents and contractors, as to what level of cooperation would be provided to the Special Master by USAO-DKan;

b. Directions or instructions of any kind or nature, directed to a specific employee, agent, or contractor, or concerning a specific employee, agent, or contractor, as to whether that employee, agent, or contractor was or is now permitted to meet with the Special Master, whether at the Special Master's request or at the recipient's request;

c. Directions or instructions of any kind or nature, to any USAO-DKan personnel, its agents, or its contractors that authorize, limit,

or forbid preparing for or providing documents and materials to the Special Master.

7. Any and all documents that discuss or describe "taint teams" used in *Black* or in this case.

8. Any documents or materials not already filed as exhibits in the *Black* case, relating to allegations that personnel, contractors, and agents of USAO-DKan personnel and their contractors acted in violation of the U.S. Constitution, statute, or other law by obtaining, possessing, listening to, or watching confidential communications of inmates and attorneys.

9. Any documents or materials that discuss a meeting to include AUSA Kim Flannigan, SAUSA Erin Tomasic, or both, and Attorney Jacquelyn Rokusek, limited to a case where Rokusek represented Richard Dertinger.

10. Any documents or materials regarding then-SAUSA Erin Tomasic's issuance of any Grand Jury subpoena in *Black*. This demand is limited to documents or materials that: (a) were created prior to the issuance of any such subpoena, and (b) are not prohibited from disclosure under Fed. R. Crim. Pro. 6(e).

11. A list of every individual working at, working with, or detailed to, the USAO-DKan (including attorneys, law enforcement agents (from any agency), support staff, interpreters, and other contractors) who is known to have accessed (whether deliberately or inadvertently): any video recording of attorneys meeting at CCA with detainees; and/or, any telephone conversations between CCA detainees and attorneys.

12. For every person identified in item 11 who directed or permitted someone else to listen to or view the audio or video recording, identify the persons who: (a) so directed or permitted, and (b) were so directed or permitted.

13. Any and all documents and materials, not already in evidence, relating to the preservation or non-preservation of any computer, computer software, disk, or other electronic paraphernalia used by USAO-DKan to allow viewing of video recordings produced by CCA related to *Black*. This demand goes to the time before and after the Court ordered preservation of such materials by the USAO-DKan, and it includes production of documents or materials that prescribe the time frame for the regular district-wide

implementation of computer phaseouts identified in the Court's order.[14]

## II.    Standard for Section 2255 Discovery

Rule 6 of the Rules Governing Section 2255 Proceedings governs discovery matters, and provides in relevant part:

> **(a) Leave of Court Required**. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .

> **(b) Requesting Discovery**. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

In order to show "good cause" under Rule 6(a), a petitioner must provide the court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[15]  The purpose of Rule 6(b) is to enable the court "to make certain that the inquiry is relevant and appropriately narrow."[16]

## III.    Discussion

Petitioner seeks leave to conduct discovery related to his Sixth Amendment claim.  The government argues that Petitioner cannot show good cause for his discovery requests because (1) his Sixth Amendment claim is either waived or procedurally defaulted; and (2) his requests are irrelevant to his Sixth Amendment claim.  The government alternatively asserts that the Court should (3) deny the majority of his requests as premature because they pertain only to the adequate remedy; or (4)

---

[14]Doc. 584.

[15]*Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *LaFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999).

[16]Rules Governing Section 2254 Cases, Rule 6(b) advisory committee notes.  Rule 6 of the Section 2254 rules is "fully applicable to discovery under these rules for § 2255 motions."  *See* Rule 6 of the Rules Governing Section 2255 Proceedings, advisory committee notes.

find the discovery requests overbroad, unduly burdensome, irrelevant, seek privileged information, and/or seek duplicative information provided in *Black*.

### A. Waiver and Procedural Default

### 1. Collateral Attack Waiver

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.[17]  The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.[18]

To determine whether the disputed issue falls within the scope of the waiver, the court begins with the plain language of the plea agreement.[19]  The court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered the plea.[20]  The court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant.[21]

The government takes the position that a defendant's unconditional and voluntary Rule 11(c)(1)(C) guilty plea constitutes a waiver of all non-jurisdictional defenses to the charge(s) to which he has pleaded guilty except: (1) due process claims alleging vindictive prosecution, (2) double jeopardy claims that are evident from the face of the indictment, or (3) claims that the

---

[17]*United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003); *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).

[18]*United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

[19]*United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328.

[20]*United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1206 (10th Cir. 2004).

[21]*Hahn*, 359 F.3d at 1343.

statute of conviction is unconstitutional.[22]  The government argues that Petitioner's claim that the government violated his Sixth Amendment right to confidential attorney-client communications is not jurisdictional, nor does it implicate any one of the three types of claims identified in *DeVaughn* and *Class* as falling outside the general waiver rule.  The government contends that because Petitioner is now raising an independent claim relating to the alleged deprivation of constitutional rights that purportedly occurred before the entry of his guilty pleas—and petitioner does not challenge his plea as either uncounseled or involuntary—his claim is foreclosed.  But Petitioner's Sixth Amendment claim is not an "independent confidential communications claim" that he waived raising on direct appeal.  Instead, Petitioner claims that by intentionally intruding into his protected attorney-client relationship absent a legitimate justification, the government violated his Sixth Amendment right to effective counsel.  As detailed below, this claim alleges prosecutorial misconduct and is raised as a collateral attack of his conviction and sentence.

The government also seeks to enforce the waiver of collateral attack in the plea agreements.  The waiver provision in Petitioner's plea agreements expressly reserved his right to collaterally attack his convictions and sentence based on a claim of ineffective assistance of counsel or prosecutorial misconduct.  Each plea agreement contains this specific language: "[T]he defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or *prosecutorial misconduct*."[23]

---

[22]*See United States v. DeVaughn*, 694 F.3d 1141, 1145–46 (10th Cir. 2012) (stating that an unconditional and voluntary plea waives all non-jurisdictional claims except for constitutional due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment); *Class v. United States*, 138 S. Ct. 798, 803 (2018) (holding that guilty plea by itself does not bar a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal).

[23]Case No. 14-20014-JAR, Doc. 478 at 9; Case No. 15-20006, Doc. 94 at 19; Case No. 15-20020-JAR, Doc. 247 at 18 (emphasis added).

The government asserts that Petitioner's claim that the government violated his Sixth Amendment right to confidential attorney-client communications attacks both his convictions and sentences, without alleging that this Court's sentence was in excess of the parties' recommendation, and thus falls within the scope of the express collateral attack waiver, which squarely bars such challenges. The government acknowledges in a footnote, however, that a claim of prosecutorial misconduct would fall outside the scope of the waiver but asserts that such a claim can only arise in the context of the Due Process Clause of the Fifth Amendment, not the Sixth Amendment.[24]

While prosecutorial misconduct does not necessarily result in constitutional error, the government construes such a claim too narrowly. The Tenth Circuit recently reaffirmed that "[p]rosecutorial misconduct can cause constitutional error in two ways."[25] "First, it can prejudice a specific right as to amount to a denial of that right."[26] The court noted, "[t]hese violations often occur outside of trial," such as during discovery, jury selection, initiation of proceedings, and outside court proceedings.[27] Second, "absent infringement of a specific constitutional right, a prosecutor's misconduct may in some instances render a . . . trial 'so fundamentally unfair as to deny [a defendant] due process.'"[28]

The prosecutorial misconduct alleged in Petitioner's cases falls under the first category. Petitioner clearly claims that the government's misconduct deprived him of his Sixth

---

[24]Doc. 593 at 19 n.1.

[25]*United States v. Christy*, 916 F.3d 814, 824 (10th Cir. 2019) (citing *Underwood v. Royal*, 894 F.3d 1154, 1167 (10th Cir. 2018)).

[26]*Id.*

[27]*Id.* at 824 n.5 (collecting cases); *see United States v. Orozco*, 916 F.3d 919, 924 (10th Cir. 2019) (affirming district court's finding that prosecutorial misconduct violated defendant's Sixth Amendment right to present a defense).

[28]*Id.* at 824 (internal citations and quotations omitted).

Amendment right to effective counsel by intentionally intruding into his attorney-client relationship absent a legitimate justification.[29]  The government's argument that waiver applies because prosecutorial misconduct can only arise in the context of the Fifth Amendment is simply a misstatement of constitutional law.

Moreover, the plain language of the plea agreements is expressly conditioned on the Petitioner's right to raise any subsequent claim based on prosecutorial misconduct, without limitation to the Fifth Amendment.  A plea agreement is a contract, and thus any ambiguities in the agreements will be construed against the drafter.[30]  In the context of criminal plea agreements, the government is held to a higher standard, and a defendant's waiver of appeal or collateral attack is construed narrowly and against the government.[31]  Here, under the plain language of the plea agreements, Petitioner's Sixth Amendment claim qualifies as a claim of prosecutorial misconduct, an exception to the collateral attack waiver.

## 2.    Procedural Default

The government argues that even if Petitioner raised claims of prosecutorial misconduct, his claims have been procedurally defaulted because they were not presented on direct appeal. Courts usually will not entertain a § 2255 motion if the movant did not raise the claim on direct

---

[29]*See Shillinger v. Haworth*, 70 F.3d 1132, 1142–43 (10th Cir. 1995).

[30]*Garza v. Idaho*, 139 S. Ct. 738, 744–45 (2019) ("That an appeal waiver does not bar claims outside its scope follows from the fact that, "[a]lthough the analogy may not hold in all respects, plea bargains are essentially contracts."); *Hahn*, 359 F.3d at 1343.

[31]*See United States v. Gordon*, 480 F.3d 1205, 1207 (10th Cir. 2007) ("[I]n determining the scope of a waiver, the court must strictly construe any ambiguities in the agreement against the government (the drafter) and in favor of the defendant.  This means waivers should be narrowly construed.") (internal citation omitted); *United States v. Bowman*, 634 F.3d 357, 360–61 (6th Cir. 2011) ("[B]ecause plea agreements' constitutional and supervisory implications raise concerns over and above those present in the traditional contract context, in interpreting such agreements we hold the government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in the plea agreements.  Ambiguities in a plea agreement are therefore construed against the government, especially because the government can take steps in drafting a plea agreement to avoid imprecision." (internal markings omitted)).

appeal.[32]  "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[33]  If the government raises a procedural bar, courts must enforce it unless cause and prejudice or a miscarriage of justice is shown.[34]

As a threshold issue, the Court first addresses whether Petitioner's claims fall within an exception to the procedural default doctrine for claims that could not be presented without further factual development.  The Supreme Court has determined that the procedural default doctrine is inapplicable during collateral proceedings where the petitioner's claim is based on facts that were outside the appellate record and not open to consideration and review on direct appeal.[35]  Courts will thus dismiss a procedural default defense where the factual predicate for the petitioner's claim is not within the appellate record and further factual development is necessary to resolve the claim.[36]

Here, the facts regarding Petitioner's Sixth Amendment claims were neither in the record nor available for consideration and review on direct appeal.  The government argues that Petitioner's Motion for Rule 16 discovery, confidential legal visitation, and return of property

---

[32]*United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012); *see United States v. Frady*, 456 U.S. 152, 165 (1982).

[33]*United States v. Snyder*, 871 F.3d 1122, 1126–27 (10th Cir. 2017) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

[34]*United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

[35]*Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (holding procedural default doctrine inapplicable where the claim rests on facts that were "dehors the record and their effect on the judgment was not open to consideration and review on appeal.") (quotation omitted).

[36]*See, e.g., Massaro v. United States*, 538 U.S. 500, 504–05 (holding that a § 2255 motion is preferable to a direct appeal because, when a claim is brought on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate" for the purpose of litigating or preserving the claim); *United States v. Chalan*, 438 F. App'x 710, 712, (10th Cir. 2011) (unpublished) (recognizing that "if the factual predicate for a claim is not available, it would appear to qualify under *Bousley* as a "claim [] that could not be presented without further factual development") (quoting *Bousley*, 523 U.S. at 621–22).

under Rule 41(g), filed in August 2016, is evidence that he "had a potential Sixth Amendment claim based on video recordings of his meetings with counsel at CCA Leavenworth and his outgoing telephone calls to counsel."[37] This motion asked the government to (1) identify whether attorney-client communications had been provided by CCA, and if so, to identify whether the AUSA or case agents had reviewed the recordings and (2) provide notice of whether the confidential recordings are in the possession of the USAO as part of the *Black* case, and if so, identify, preserve, and return those documents.[38] The government contends that because Petitioner learned the basis of his current Sixth Amendment claim months before the time to file a direct appeal expired, he cannot show cause for not raising the issue on direct appeal.

As Petitioner notes, however, the government never responded to his Rule 16/41(g) motion, which was simply terminated after Petitioner entered into his guilty pleas and was sentenced. In January 2019, the government confirmed for the first time that it was in possession of Petitioner's recorded CCA telephone phone calls and derivative information thereof when it surrendered them to the Court on January 7, 2019.[39] And the video recordings from CCA have been impounded by the Court since the fall of 2016 and were not turned over to the FPD until the *Black* Order was entered on August 13, 2019. Thus, while Petitioner's Rule 16/41(g) motion demonstrates he was aware as of August 2016 that he may have a potential Sixth Amendment claim, the essential facts to establish that claim were not yet known to counsel and were never before this Court.

---

[37] Doc. 593 at 29.

[38] Doc. 318.

[39] *See United States v. Black*, 16-20032-JAR, Doc. 711 at 9, 17 (FPD's Motion to Admit Exhibit No. 715, the government's written inventory of CCA phone calls and derivative evidence in its possession). The FPD was permitted to copy the material turned over by the government.

Moreover, the Tenth Circuit recently dismissed an appeal from this District where the defendant raised a Sixth Amendment claim with similar allegations of prosecutorial misconduct arising out of the *Black* proceedings because the factual basis for the claim was not in the record.[40]  In that case, the USAO took the position that the prosecutorial misconduct claim is "cognizable only as a § 2255 motion," and urged the Tenth Circuit to reject defendant's claim on direct appeal as factually unsubstantiated.[41]  The Tenth Circuit agreed, noting the "absence of record evidence" to support the claim.[42]  And in several pending criminal cases in this District, Judge Carlos Murguia recently foreclosed the defense from investigating or litigating the government's alleged Sixth Amendment violations, "find[ing] it proper to refrain from making substantive rulings on the allegations in motions to dismiss based on *Black* issues" because "[e]vidence is not presently available for review, and this court does not wish to interfere with the ongoing *Black* litigation until after Judge Robinson has issued final rul[ings]."[43]  If Petitioner had argued his Sixth Amendment claim on direct appeal, he likely would have met with the same result—it is not a great leap to predict the government would have responded that his Sixth Amendment claim was only cognizable on collateral review.[44]

---

[40]*United States v. Harssfell*, 735 F. App'x 553 (10th Cir. 2018) (unpublished).

[41]*United States v. Harssfell*, No. 17-3235, Br. of Appellee at 17–20.

[42]*Harssfell*, 735 F. App'x at 554.

[43]*United States v. Velazquez*, D. Kan. 16-20031-CM, Doc. 315 (denying defendant's motion to dismiss but clarifying that the "ruling does not mean that defendant will never be entitled to any relief based on his allegations"); *see also United States v. Crawford*, D. Kan. 15-20042-CM, Sentencing Hr'g. Tr. 3/25/2019 at 21–23 (same); *United States v. Duarte-Tello*, D. Kan. 16-20016-CM, Motions Hr'g. Tr 3/20/19 ("The direct brief ruling is going to be that the court does not find that there's been a specific particularized finding shown or basis shown for the court to find that there's been interference with these particular defendants and their counsel's communication.").

[44]In fact, the Department of Justice took the same position throughout the *Black* proceedings, arguing that the "appropriate mechanism" for these claims of Sixth Amendment violations by the USAO is through federal habeas proceedings.  *See* D. Kan. No. 16-20032-JAR, Doc. 336 at 18; Doc. 554 at 7; Doc. 697 at 41–42.

Even if the procedural default defense was available to the government, however, Petitioner can establish cause and prejudice. To establish cause, a defendant must "show some external objective factor—such as governmental interference, unavailability of relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal."[45] "Cause excusing procedural default may also be shown if a claim 'is so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the direct appeal."[46] The factual basis for Petitioner's Sixth Amendment claims was not reasonably available to him at the time of his direct appeal, due in large part to the government's strategy of delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings, including Petitioner's.[47] The existence and scope of potential Sixth Amendment claims was not certain until January 2019 for his audio recordings claim and August 13, 2019 for his video recordings claim, well past his deadline for filing a direct appeal.

To establish prejudice, a defendant "must show that the error of which he complains is an 'error of constitutional dimensions' that 'worked to his actual and substantial disadvantage.'"[48] Where a petitioner raises a Sixth Amendment claim in which prejudice is presumed, that prejudice is not just a mere possibility of prejudice, but is a sufficient basis to establish prejudice under the procedural default rule.[49] If Petitioner's Sixth Amendment allegations are proved

---

[45]*Torres-Laranega*, 473 F. App'x at 842; *see United States v. Zander*, 723 F. App'x 617, 619 (10th Cir. 2018).

[46]*United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

[47]*See generally Black* Order; Doc. 583 at 2–10.

[48]*Snyder*, 871 F.3d at 1128 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[49]*See, e.g., Garza v. Idaho*, 139 S. Ct. 738, 742 (2019) (clarifying presumption of prejudice stemming from counsel's failure to perfect appeal applies "regardless of whether the defendant has signed an appeal waiver," and stating prejudice is presumed "with no further showing from the defendant of the merits of his underling claims"); *Jones v. Cowley*, 28 F.3d 1067, 1073 (10th Cir. 1994) (reversing and remanding, finding cause-and-prejudice standard met if counsel failed to perfect petitioner's appeal in violation of petitioner's right to counsel since prejudice is presumed); *United States v. Skurdal*, 341 F.3d 921, 928 (9th Cir. 2003) (because the denial of counsel

correct, extant Tenth Circuit law directs that "a prejudicial effect on the reliability of the trial process must be presumed."[50] Therefore, Petitioner can establish prejudice under the procedural default doctrine.

Accordingly, the Court denies the government's motion to dismiss Petitioner's Sixth Amendment claim in his § 2255 motion on collateral waiver and procedural default grounds. The government's corresponding argument that Petitioner cannot show good cause for his discovery requests is also overruled on these grounds.

### B. Remaining Grounds for Good Cause

In order to be permitted to conduct discovery, a petitioner must show "good cause" and provide "reasons for the request."[51] "[T]he scope and extent of such discovery is a matter confided to the discretion of the District Court."[52] The Supreme Court has held that to meet the good cause requirement, a petitioner must provide the court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[53] Claims or allegations based on "mere speculation" are "unlikely to establish good cause for a discovery request on collateral review."[54] "As the Court distinguished, the good cause showing under Rule 6(a) is targeted at discovery and is not

---

under the circumstances was "prejudicial per se," petitioner "demonstrated cause and prejudice for the failure to raise the contentions on direct appeal"); *Rosenwald v. United States*, 898 F.2d 585, 587 (7th Cir. 1990) (the prejudice inquiry under procedural-default doctrine for petitioner's Sixth Amendment conflict-of-interest claim turns on the merits of the claim given that prejudice must either be presumed or "something less than a full showing of prejudice usually required under *Strickland*.").

[50]*Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[51]Rules Governing Section 2255 Proceedings, Rule 6.

[52]*Bracy v. Gramley*, 520 U.S. 899, 909 (1997).

[53]*Id.* at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

[54]*Strickler v. Greene*, 527 U.S. 263, 286 (1999).

meant to be judged by whether or not a petitioner would succeed on the merits of his claim.[55]  A court abuses its discretion by denying discovery once a good-cause showing is made since "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."[56]

The government asserts that most of Petitioner's discovery requests are "irrelevant" to his § 2255 motion and, as a result, he cannot show "good cause" for those requests.  Specifically, the government asserts that the majority of the requests (#3 through #13) relate to the *Black* litigation or the *Dertinger* case, and because "any alleged violations of another inmate's Sixth Amendment rights are not at issue here," those discovery requests are "irrelevant" to Petitioner's Sixth Amendment claim.  The government further argues that any remedy for a Sixth Amendment violation must be tailored to the harm suffered by the individual defendant, not by defendants in other cases.

The government conflates relevance with good cause required under Rule 6(a).  As the Advisory Committee notes explain, the purpose of Rule 6(b) is to enable the court "to make certain that the inquiry is relevant and appropriately narrow."[57]  The Court limits its finding here to whether Petitioner has established good cause for his discovery requests and finds that specific determinations of relevance are more appropriately left for Judge O'Hara.

The parties disagree on what Petitioner must establish to succeed on his Sixth Amendment claim.  The Court conducted an extensive analysis of the law pertaining to alleged

---

[55]*Stouffer v. Reynolds*, 168 F.3d 1155, 1173 (10th Cir. 1999) (citing *Bracy*, 520 U.S. at 909) ("[I]t may well be . . . that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish 'good cause' for discovery.").

[56]*Id.* (quoting *Harris*, 394 U.S. at 300).

[57]Rules Governing Section 2254 Cases, Rule 6(b) advisory committee notes. Rule 6 of the Section 2254 rules is "fully applicable to discovery under these rules for § 2255 motions." *See* Rule 6 of the Rules Governing Section 2255 Proceedings, advisory committee notes.

Sixth Amendment violations in the *Black* Order.[58]  In *Shillinger v. Haworth*, the Tenth Circuit

held that a per se Sixth Amendment violation occurs where (1) there were protected attorney-

client communications; (2) the government purposefully intruded into the attorney-client

relationship; (3) the government became "privy to" protected attorney-client communications as

a result of its purposeful intrusion; and (4) the intrusion was not justified by any legitimate law

enforcement interest.[59]  Once these factors are established, "a prejudicial effect on the reliability

of the trial process must be presumed."[60]

Petitioner asserts that he can establish that the government violated his Sixth Amendment

rights.  In support, he contends facts derived from (1) the investigation in *Black* and related

cases, (2) extensive research and analysis conducted by the FPD, and (3) facts developed at an

evidentiary hearing in this § 2255 proceeding, will demonstrate that the government intentionally

obtained both video and phone recordings of confidential attorney-client communications

between Petitioner and his counsel at CCA.  In turn, Petitioner asserts, the government cannot

establish that any legitimate law enforcement purpose justified its actions.  Under *Shillinger*, that

is enough to establish a per se Sixth Amendment violation and that prejudice must be presumed.

Petitioner provides the Court with specific allegations regarding the USAO's systematic

collection of all recorded telephone calls from CCA, with no exception for attorney-client calls

or any other precautionary measures, as evidence of a pattern and practice of purposeful and

large-scale intrusion of attorney-client communications.[61]  This Court also made extensive

findings regarding the USAO's practice regarding obtaining audio recordings from CCA in the

---

[58]*Black* Order at 145–63.

[59]70 F.3d 1132, 1142 (10th Cir. 1995); *see Black* Order at 162.

[60]*Shillinger*, 70 F.3d at 1142 (holding that no "case-by-case inquiry into prejudice" is necessary because "such intentional and groundless prosecutorial intrusions are never harmless").

[61]Doc. 583 at 3–8.

*Black* Order.[62]  Petitioner provides the Court with specific allegations of similar misconduct in his case, which he alleges will show that the government intentionally procured and possessed recorded phone calls and confidential communications that took place between Petitioner and his counsel while he was a detainee at CCA.  Specifically, the FPD's investigation has revealed that (1) at least 76 recorded attorney-client phone calls between Petitioner and his counsel were accessed and obtained by the government during the course of his prosecution; (2) at least 13 of those attorney-client phone calls exceeded two minutes in duration (seven of which were between eight to thirteen minutes in duration); and (3) there are at least two documented production requests for Petitioner's calls made by the government, one of which includes a signed acknowledgement receipt by the prosecutor.  And, on January 7, 2019, the government confirmed for the first time that it had been in possession of Petitioner's recorded CCA phone calls and surrendered those calls to the Court.  These specific allegations are more than sufficient to show reason to believe that Petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to specific relief.  Accordingly, the Court finds Petitioner has made a good cause showing and authorizes Petitioner to conduct discovery with respect to audio recordings under Rule 6(a).

Petitioner also alleges misconduct with respect to video recordings of meetings with his attorney at CCA.  He generally alleges such meetings took place in one of the five meeting rooms in which a camera recorded the meetings and that the meetings took place between February 20, 2016 and May 16, 2016.  Unlike the phone recordings, Petitioner did not have access to the video recordings at the time of his motion for discovery.  In the *Black* Order, the Court granted the FPD's Rule 41(g) motion and ordered the government to turn over six DVRs

---

[62]*Black* Order at 80–123.

impounded by the Court to the FPD for review to determine that the video of the attorney-client meeting exists and that the quality of the non-verbal communications is sufficient to confirm communication between the detainee and counsel.[63]  Accordingly, the Court limits its findings at this time to audio recordings and finds issues with respect to video recordings should be determined by Judge O'Hara.

### C.    Bifurcation and Specific Objections

The government argues that in the event the Court rejects its good cause arguments, then the Court should deny most of Petitioner's discovery requests without prejudice as premature. Before the Court considers the specific discovery requests and objections thereto—most of which relate to the remedy Petitioner seeks—the government asks that the Court first determine whether there was a Sixth Amendment violation in the instant case.  If Petitioner demonstrates a Sixth Amendment violation, the issue of a remedy would become relevant.  As previously noted, the Court limits its finding at this time to whether Petitioner has established good cause to authorize discovery and finds the issue of bifurcation and/or specific discovery objections should be determined by Judge O'Hara.

### IV.    Conclusion

The government repeats the circular argument made in the *Black* case that because Petitioner has not proven a Sixth Amendment violation, he is not entitled to discovery to investigate the Sixth Amendment claim.  But it is well documented that the government's document production in *Black* was not only incomplete, but a "document dump."[64]  The government also withheld a number of documents based on claims of privilege or other legal

---

[63]*Black* Order at 165.

[64]*See id.* at 142.

protection but did not create or produce a privilege or production log.[65]  And much of the documents and information sought by Petitioner are in the government's sole possession, custody, or control.  To claim lack of evidence as a basis for denial of discovery is to substitute the cause for the consequence.  As this Court previously noted, the DOJ and the USAO have repeatedly argued that the "appropriate mechanism" for investigation of any Sixth Amendment violations arising out of the Special Master's investigation in *Black* is through federal habeas relief under 28 U.S.C. § 2255.  Indeed, this Court has made clear in the *Black* case that the government may be required to produce outstanding documents and information in habeas proceedings.[66]  Because Petitioner has demonstrated good cause to conduct discovery with respect to audio recordings under Rule 6(a), it is the duty of this Court "to provide the necessary facilities and procedures for an adequate inquiry" into his Sixth Amendment claim.[67]

IT IS THEREFORE ORDERED BY THE COURT that the government's Motion to Enforce Collateral Attack Waiver and Dismiss Ground 1 of Petitioner's § 2255 (Doc. 593) is **denied.**

IT IS FURTHER ORDERED that Petitioner's Motion for Leave to Conduct Discovery (Doc. 584) is **granted in part**;  the Court finds that Petitioner has established good cause and authorizes Petitioner to conduct discovery with respect to audio recordings under Rule 6(a); the

---

[65]*Id.*

[66]*See* D. Kan. No. 16-20032-JAR, Doc. 713 at 35 (noting in modifying final production order that "[i]n so ruling, however, the Court does not suggest the government will never have to produce these documents and information," and that the DOJ had repeatedly argued that the "appropriate mechanism for investigation of Sixth Amendment violations is through § 2255); Tr. November 16, 2018 Hr'g, Doc. 694 at 2805 ([Court:] "[W]e're talking about an investigation of—of alleged prosecutorial misconduct within the context of this case and that will likely raise its head hundreds of times again in the context of habeas actions to come, which are [] civil litigation. And I will tell you that in civil litigation, you're going to have—you know, whether it's discovered now or later, you're going to be under those same obligations.").

[67]*Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Court refers the good cause determination on video recordings as well as the specifics of

Petitioner's requests and the objections thereto to Chief Magistrate Judge James P. O'Hara.

**IT IS SO ORDERED.**

Dated: <u>August 13, 2019</u>

                     <u>S/ Julie A. Robinson</u>
                    JULIE A. ROBINSON
                    CHIEF UNITED STATES DISTRICT JUDGE